IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BRENT ANDERSON and wife ANGELA ANDERSON, | § § § § § | |
| Plaintiffs, | | |
| v. | § § § | Case No. 4:12-CV-238 |
| HSBC BANK USA, N.A., AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2007-WMI ASSET-BACKED PASS-THROUGH CERTIFICATES and BANK OF AMERICA, N.A., | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The following are pending before the court:

1. Defendants' motion for summary judgment (docket entry #25);

2. Plaintiffs' response and brief in opposition to Defendants' motion for summary judgment (docket entry #27);

3. Defendants' reply to Plaintiffs' response to motion for summary judgment (docket entry #28); and

4. Plaintiffs' sur-reply in support of their response to Defendants' motion for summary judgment (docket entry #29).

Having considered the Defendants' motion for summary judgment and the subsequent briefing thereto, the court finds that the motion should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs challenge the February 2012 foreclosure sale of the property located at 735 Pheasant Run Drive, Murphy, Texas 75094 ("the Property"). On August 28, 2006, Plaintiff Brent Anderson executed a Note promising to pay $321,600.00, plus interest, to WMC Mortgage Corp. ("WMC"). To secure repayment of the Note, the Plaintiffs executed a Deed of Trust which named Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and nominee for WMC, its successor and assigns. In 2011, MERS assigned the Deed of Trust to HSBC Bank USA. Bank of America acts as a mortgage servicer for HSBC Bank USA.

Beginning in June 2009, the Plaintiffs experienced difficulties in making their mortgage payments. On March 3, 2010, the Plaintiffs and Bank of America entered into a trial loan modification. According to the terms of the trial loan modification agreement, the Plaintiffs were required to make payments in the amount of $2,445 on or before April 1, 2010, May 1, 2010 and June 1, 2010. The Defendants state that the Plaintiffs failed to timely remit their June and July 2010 payments under the trial loan modification agreement. The Plaintiffs dispute this assertion.[1] On

---

[1] The court notes that under the terms of the trial modification agreement, the Plaintiffs were required to remit payments on or before April 1, 2010, May 1, 2010 and June 1, 2010. Although the Defendants state that the Plaintiffs failed to remit their June and July 2010 trial payments, there was, in fact, no agreement to make a July 2010 trial payment.

The court further notes that the parties entered into the trial modification agreement on March 3, 2010. The Plaintiffs contend that they made their first payment in January 2010, three months *prior* to entering into the agreement. The Plaintiffs state that they made their "next" payment on March 29, 2010, a subsequent payment in April 2010 and a "final" payment on May 12, 2010. However, the records attached to the Plaintiffs' summary judgment response show that the Plaintiffs made payments in the amount of $2,445 on January 25, 2010, March 30, 2010 and May 12, 2010. Regardless, the Plaintiffs state that they abided by the terms of the March 3, 2010 trial modification agreement even though they made their "first" payment three months before they entered into the trial modification agreement.

August 18, 2010, the Defendants sent a letter to Brent Anderson notifying him that he was not eligible for a loan modification under the Home Affordable Modification Program ("HAMP"). Because the Plaintiffs did not timely remit all of their trial payments under the trial modification agreement, the Plaintiffs' mortgage returned to normal servicing on August 26, 2010.

Thereafter, the Plaintiffs contacted Bank of America and spoke with certain employees in the Home Retention department. After speaking to the Bank of America representatives, the Plaintiffs forwarded a payment to Bank of America in September 2010 in the amount of $2,358.90. This payment paid the Plaintiffs' mortgage through October 2009.

On September 24, 2010, Bank of America sent a letter via certified mail to Plaintiff Brent Anderson, notifying the Plaintiff about his delinquent mortgage loan and advising the Plaintiff that failure to cure the default would lead to acceleration of the debt and loss of the Property at a foreclosure sale.

The Plaintiffs subsequently received a letter from Bank of America that was dated September 29, 2010, advising the Plaintiffs that they were conditionally approved for a mortgage modification under the National Home Retention Program. However, representatives from Bank of America later advised the Plaintiffs that the September 29, 2010 was a mistake.

The Plaintiffs later received a letter from Bank of America dated December 9, 2010, notifying the Plaintiffs that the Home Affordable Foreclosure Alternatives ("HAFA") short sale program could be an option. However, on January 16, 2011, Bank of America notified the Plaintiffs that they were not eligible for the HAFA short sale program. The Plaintiffs, however, state that they complied with all of Bank of America's requests for information by repeatedly providing any

requested information. The Plaintiffs continued to receive communications from Bank of America, indicating that Bank of America was interested in exhausting all options before conducting a foreclosure sale.

Bank of America subsequently retained ReconTrust Company, N.A. ("ReconTrust") to conduct the foreclosure proceedings. On November 10, 2011, ReconTrust sent the Plaintiffs a letter notifying them that the debt had been accelerated and foreclosure proceedings were being initiated.

On January 3, 2012, ReconTrust sent the Plaintiffs a letter, notifying them that the foreclosure sale on the Property was scheduled for February 7, 2012. On February 7, 2012, foreclosure on the Property occurred. The Property was conveyed to HSBC Bank via a substitute trustee's deed. The Plaintiffs remain in possession of the Property.

The Plaintiffs originally filed suit in Collin County, Texas. The Defendants removed the case to this court on April 20, 2012. In the Plaintiffs' first amended complaint – the live pleading in this action – the Plaintiffs assert the following claims against the Defendants: (1) breach of contract and anticipatory breach of contract; (2) breach of common law tort of unreasonable collection efforts; (3) violation of the Texas Debt Collections Act, Texas Finance Code §§ 392.001, *et seq.*; (4) negligent misrepresentation; and (5) suit to quiet title and trespass to try title. The Plaintiffs also seek a declaratory judgment as well as an accounting of all transactions on their mortgage loan. The Defendants subsequently moved for summary judgment on all of the Plaintiffs' claims.

### LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *See id*. at 248.

Both parties have a responsibility in the summary judgment process. *Celotex*, 477 U.S. at 323–24. First, the party seeking summary judgment must show that the admissible evidentiary material of record and any affidavits submitted by the nonmoving party are insufficient to permit the nonmoving party to carry its burden of proof. The nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 248. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Roach v. Allstate Indemnity Co.*, 2012 WL 1478745 (5th Cir. 2012), citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

## DISCUSSION AND ANALYSIS

### Plaintiffs' Breach of Contract Claims

To prevail on a breach of contract claim, a plaintiff must prove: "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach." *Oliphant Fin., LLC v. Patton*, No. 05-17-01731, 2010 WL 936688, at *3 (Tex. App.—Dallas Mar. 17, 2010, pet. denied) (mem. op.); *see also Smith Intern., Inc. v. Egle*

*Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Here, the parties do not dispute the existence of a valid contract arising out of the Note and Deed of Trust. The Defendants argue that the Plaintiffs cannot establish that they complied with their obligations because the Plaintiffs failed to make their required monthly payments and, therefore, cannot maintain a claim of breach of contract against the Defendants. The court agrees. *See Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 341 (5th Cir. 2012) ("Under well-established principles of Texas contract law, that material breach would normally prevent [the Plaintiffs] from maintaining a breach-of-contract claim." (citing *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990))). The Plaintiffs, however, dispute that they defaulted on their mortgage obligations; as such, the court will address the merits of the Plaintiffs' breach of contract allegations.

  **1. MERS**

The Plaintiffs argue that they executed a Note payable to WMC and, further, that they executed a Deed of Trust which named MERS as the beneficiary and nominee for WMC, its successor and assigns. The Plaintiffs contend that although MERS assigned the Note and Deed of Trust to HSBC, MERS assignment of the Note to HSBC had no effect because MERS never held the Note.

The "split-the-note" theory suggests that "a transfer of a deed of trust by way of MERS 'splits' the note from the deed of trust, thus rendering both null. In order to foreclose, the theory goes, a party must hold both the note and the deed of trust." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013). "The weight of Texas authority, however, suggests just the opposite." *Id*. at 255.

The Texas Property Code provides that a "mortgage servicer" may administer a foreclosure on behalf of a mortgagee if "the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage," proper service is given, and notice discloses that the mortgage servicer represents the mortgagee. TEX. PROP. CODE § 51.0025. A mortgagee includes both "the grantee, beneficiary, owner, or holder of a security instrument" and "a book entry system." *Id*. § 51.0001(4). The Code defines a "book entry system" as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns." *Id*. § 51.0001(1). The "mortgage servicer" is the "last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." *Id*. § 51.0001(3). A mortgagee may be its own mortgage servicer. *Id*.

Because MERS is a book-entry system, it qualifies as a mortgagee. Thus, the Texas Property Code contemplates and permits MERS either (1) to grant the mortgage servicer the authority to foreclose or, if MERS is its own mortgage servicer, (2) to bring the foreclosure action itself. In either event, the mortgage servicer need not hold or own the note and yet would be authorized to administer a foreclosure. (Citations omitted).

The Texas courts have repeatedly discussed the dual nature of a note and deed of trust. "It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable, and a plaintiff may elect to seek a personal judgment without foreclosing the lien, and even without a waiver of the lien." *Carter v. Gray*, 125 Tex. 219, 81 S.W.2d 647, 648 (Comm'n App. 1935, writ dism'd). Where a debt is "secured by a note, which is, in turn, secured by a lien, the lien and the note constitute separate obligations." *Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App. – Corpus Christi 2002, pet. denied). The Texas courts have "rejected the argument that a note and its security are inseparable by recognizing that the note and the deed-of-trust lien afford distinct remedies on separate obligations." *Bierwirth [v. BAC Home Loans Servicing, L.P.]*, 2012 WL 3793190, at *3 (Tex. App. – Austin Aug. 30, 2012, no pet.) [footnote omitted]. A deed of trust "gives the lender as well as the beneficiary the right to invoke the power of sale," even though it would not be possible for both to hold the note. *Robeson [v. MERS]*, 2012 WL 42965, at *6 (Tex. App. – Fort Worth Jan. 5, 2012, pet. denied).

The "split-the-note" theory is therefore inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned. The party to foreclose need not possess the note itself.

*Martins*, 722 F.3d at 255. It appears to the court under these facts that, as a matter of law, the Plaintiffs' "split-the-note" bifurcation theory must fail.

### 2. Good Faith and Fair Dealing

The Plaintiffs further base their breach of contract claim on the duty of good faith and fair dealing. Texas law does not "recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a special relationship marked by shared trust or an imbalance in bargaining power." *Coleman v. Bank of Am., N.A.*, No. 3-11-cv-0430-G-BD, 2011 WL 2516169, at *1 (N.D. Tex. May 27, 2011) (citing *FDIC v. Coleman*, 795 S.W.2d 706, 708–09 (Tex. 1990)) (internal quotations omitted). In this case, the Plaintiffs have not produced any evidence showing a "special relationship" with the Defendants. Therefore, the court finds that the Plaintiffs have failed to offer competent summary judgment evidence in support of their breach of the duty of good faith and fair dealing allegation. Further, the court notes that it has reviewed the summary judgment record herein and finds that the Plaintiffs failed to brief this argument in its entirety. Accordingly, the court concludes that the Plaintiffs waived any argument regarding this issue and abandoned said claim. *See United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) ("Inadequately briefed issues are deemed abandoned.").

### 3. Waiver

The Plaintiffs next allege that the Defendants waived their right to foreclose. Under Texas law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).

The Plaintiffs argue that the Defendants misled the Plaintiffs to the point of foreclosure. This allegation, however, is not supported by the evidence. The evidence shows that the Plaintiffs were in default on their mortgage at the time the Defendants initiated foreclosure proceedings. The Plaintiffs have not raised any evidence to show that they were able to cure the default by paying the entire arrearage at the time foreclosure proceedings commenced. There is no evidence to support the Plaintiffs' allegations that the Defendants contributed to or caused the Plaintiffs' default that led to foreclosure. The Plaintiffs have not pointed to any evidence that the Defendants intentionally relinquished their right to foreclose or acted in a way inconsistent with claiming their right to foreclose.

### 4. Statute of Frauds

The Plaintiffs further contend that the trial modification agreement contained in the March 3, 2010 letter was an offer to modify the Plaintiffs' loan that was reduced to a writing. However, the summary judgment evidence shows that the Plaintiffs failed to make all of the payments under the trial modification agreement.

The Plaintiffs additionally argue that Bank of America stated that it would not conduct a foreclosure sale while it determined if the Plaintiffs were eligible for a mortgage modification under HAMP or the National Home Retention Program. Any contract modifying the Note and Deed of Trust is subject to the statute of frauds and must be in writing to be enforced. TEX. BUS. & COM. CODE § 26.02(a)(2) & (b). Because the February 24, 2010 HAMP solicitation letter was merely an invitation to discuss modifying the terms of the Plaintiffs' loan and because the September 29, 2010 National Home Retention Program letter only conditionally approved the Plaintiffs for a mortgage

modification, they are unenforceable. Neither party has put forth any evidence that the terms of these offers were reduced to writing; therefore, no genuine issue of material fact exists as to this claim.

5. **Anticipatory Breach of Contract**

An anticipatory breach of contract "is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance." *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). To establish a claim for anticipatory breach of contract, a plaintiff must show: "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004). "An anticipatory repudiation of a contract may consist of either words or actions by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010). But "the declaration of intent to abandon must be in positive and unconditional terms." *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. Civ. App.—Austin 1951, no writ). Oral modifications of contracts are unenforceable under the Texas statute of frauds. TEX. BUS. & COM. CODE § 26.02(a)(2) & (b); *see also Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n*, No. 12-10307, 2013 WL 363118, at *1 (5th Cir. Jan. 30, 2013). Therefore, the only contract in existence in this case was the one created by the Note and Deed of Trust. The Plaintiffs have put forth no evidence that the Defendants repudiated their obligations under the Note and Deed of Trust so there is no genuine issue of material fact on this claim.

Based on the foregoing, the Defendants' motion for summary judgment on the Plaintiffs' breach of contract claims is hereby **GRANTED**.

**Plaintiffs' Texas Finance Code/Texas Debt Collections Act Claims**

The Plaintiffs allege that the Defendants violated §§ 392.301(a)(8), 392.303(a)(2), 392.302(4), 392.304(a)(8), and 392.304(a)(19) of the Texas Finance Code, all portions of the Texas Debt Collections Act ("TDCA"). In support of their TDCA claims, the Plaintiffs argue that the Defendants misrepresented the amounts owed by the Plaintiffs on their mortgage, wrongfully accelerated the debt, wrongfully posted the Property for foreclosure, and wrongfully posted penalties and attorneys fees on the Plaintiffs' mortgage account, thereby using a deceptive means to collect a debt. Further, the Plaintiffs contend that the Defendants misrepresented the extent of the debt to the Plaintiffs by refusing to allow the Plaintiffs to cure any default, by representing that the Plaintiffs qualified for a loan modification, and by advising the Plaintiffs that they would not foreclose on the Property during the loan modification. The court will address each section in turn.

1. **Section 392.301(a)(8)**

Section 392.301(a)(8) of the TDCA prohibits debt collectors,[2] in debt collection,[3] from using threats, coercion, or attempts to coerce that threaten to take an action prohibited by law. Not only does Section 392.301(b)(3) specifically exclude the exercising of a "statutory or contractual right of seizure, repossession or sale that does not require court proceedings" from its provisions, *see* TEX. FIN. CODE § 392.301(b)(3), the court has already found that the parties did not enter into a valid, enforceable agreement to modify the loan or stall the foreclosure once the Plaintiffs failed to comply

---

[2] A debt collector is "a person who directly or indirectly engages in debt collection." TEX. FIN. CODE § 392.001(6).

[3] Debt collection is "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due to a creditor." TEX. FIN. CODE §392.001(5). A "consumer debt" is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." TEX. FIN. CODE § 392.001(2).

with the terms of the trial modification agreement. The Plaintiffs cited to no summary judgment evidence to support their claim that the Defendants threatened to take an action they could not. Therefore, summary judgment is **GRANTED** for the Defendants with respect to the Plaintiffs' claims under § 392.301(a)(8).

### 2. Section 392.303(a)(2)

Section 392.303(a)(2) of the Texas Finance Code prohibits a debt collector from using unfair or unconscionable means in collecting or attempting to collect interest or charges not authorized by the Note, Deed of Trust or applicable law. The Plaintiffs also base this claim on their contention that the foreclosure was unlawful, thus making the collection of any fees associated with acceleration and foreclosure unauthorized. Because, as discussed above, the court has rejected the Plaintiffs' arguments regarding the unlawful foreclosure and because the Plaintiffs failed to cite to any evidence that would create a fact issue that they were charged fees not authorized by the mortgage documents or applicable law, summary judgment is **GRANTED** for the Defendants as to the Plaintiffs' claims under § 392.303(a)(2).

### 3. Section 392.302(4)

Section 392.302(4) of the Texas Finance Code prohibits a debt collector from oppressing, harassing, or abusing a person by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number. The Plaintiffs offered no summary judgment evidence that the Defendants engaged in this behavior. Accordingly, summary judgment is **GRANTED** for the Defendants with respect to the Plaintiffs' claims under § 392.302(4).

4. **Sections 392.304(a)(8) and 392.304(a)(19)**

The TDCA prohibits debt collectors from making fraudulent, deceptive, or misleading representations concerning "the character, extent, or amount of a consumer debt." TEX. FIN. CODE § 392.304(a)(8). The TDCA also prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id*. at § 392.304(a)(19). A statement is a misrepresentation if the defendant made "a false or misleading assertion." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010). The TDCA applies to foreclosure actions because "foreclosure actions inevitably involve a debt collection aspect." *See Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 730-732 (N.D. Tex. 2011). However, "[d]iscussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of the debt." *Watson v. Citimortgage*, No. 4:10-cv-707, 2012 WL 381205, at *7 (E.D. Tex. Feb. 3, 2012).

As discussed above, the court has rejected the Plaintiffs' arguments regarding the allegedly unlawful foreclosure. Further, because the Plaintiffs failed to cite to any evidence that would create a fact issue that the Defendants made fraudulent, deceptive or misleading representations about the character, extent or amount of the Plaintiffs' debt, summary judgment is **GRANTED** for the Defendants with respect to the Plaintiffs' claims under §§ 392.304(a)(8) and 392.304(a)(19).

**Plaintiffs' Unreasonable Collection Efforts Claim**

Under Texas law, "(u)nreasonable collection is an intentional tort." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.). "[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *Id.*; *see also B.F. Jackson, Inc. v. Costar Realty Info., Inc.*, No. H-08-3244, 2009 WL

1812922, at *5 (S.D. Tex. May 20, 2009). Pleadings sufficient to support a claim for unreasonable collection efforts must contain facts that amount to "a course of harassment" by the defendant that "was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-cv-370, 2011 WL 676955, at *6 (E.D. Tex. Jan. 27, 2011), *adopted by*, 2011 WL 675392 (E.D. Tex. Feb. 16, 2011). The standard for showing unreasonable collection efforts requires intent, not mere negligence. *Bray v. Cadle Co.*, No. 4:09-cv-663, 2010 WL 4053794, at *19 (S.D. Tex. Oct. 14, 2010); s*ee also Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 342 (5th Cir. 2012) (noting the *Lathram* standard "has largely been disavowed by Texas courts"); *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010) ("[E]vidence of negligence is insufficient to support a cause of action for unreasonable collection efforts.").

The Plaintiffs argue that the Defendants' actions were unreasonable. Specifically, the Plaintiffs assert that the Defendants offered, and the Plaintiffs accepted, a loan modification contingent upon the Plaintiffs making the three trial payments under the trial modification agreement. The Plaintiffs argue that they made the three trial payments but the Defendants failed to modify the Plaintiffs' loan. Further, the Defendants sent letters to the Plaintiffs advising the Plaintiffs that a foreclosure sale would not occur while the Defendants reviewed the Plaintiffs' loan modification requests. The Plaintiffs contend that said actions were malicious and wanton. The Plaintiffs, however, have offered no summary judgment evidence that the Defendants' actions amounted to a course of harassment that was willful, wanton, malicious, or intended to inflict mental anguish and bodily harm. Therefore, the Defendants' motion for summary judgment on this claim is **GRANTED**.

**Plaintiffs' Negligent Misrepresentation Claim**

Under Texas law, a claimant alleging negligent misrepresentation must show the following:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation.

*Biggers*, 767 F. Supp. 2d at 734. "[T]he misrepresentation at issue must be one of existing fact" rather than a promise of future conduct. *Fankhauser v. Fannie Mae*, No. 4:10-cv-274, 2011 WL 1630193, at *7 (E.D. Tex. Mar. 20, 2011), *adopted by*, 2011 WL 1630177 (E.D. Tex. Apr. 29, 2011). Representations with regard to future loan modifications and foreclosure (or forbearance from foreclosure) "constitute promises of future action rather than representations of existing fact" and cannot support a negligent misrepresentation claim. *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 342 (5th Cir. 2012) (internal quotation marks and citations omitted).

The Plaintiffs contend that the Defendants represented that they would modify the Plaintiffs' loan and postpone the foreclosure on the Property. Since both alleged representations constitute promises of future action, the Plaintiffs' negligent misrepresentation claims fail as a matter of law.

Additionally, "[t]he economic loss doctrine has been applied consistently to bar claims for negligence and other tort claims when the parties' relationship and its attendant duties arise from a contract." *Stapp v. Bank of Am., N.A.*, No. 4:11-cv-203, 2012 WL 3853440, at * 5 (E.D. Tex. Sep. 5, 2012, *adopted by*, 2012 WL 4502426 (E.D. Tex. Sep. 28, 2012). The Plaintiffs allege that they suffered substantial stress, depression and anxiety, as well as damage to credit reputation, loss of

property, and loss of time spent, in addition to damages as a result of the contract.[4] However, the Plaintiffs' tort claim for negligent misrepresentation arises from the contract between the parties. *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625-26 (N.D. Tex. 2011). To recover for a claim of negligent misrepresentation, the Plaintiffs must show an injury independent from the subject matter of the contract; however, the Plaintiffs have not put forth any evidence that would create a genuine issue of material fact on this issue. The Plaintiffs' alleged "injuries are in no way independent of the subject matter of the deed of trust or note" and the parties' relationship thereunder. *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 634 (N.D. Tex. 2010). Indeed, but for the obligations created under the Deed of Trust and Note, the Plaintiffs would not have spent the time they purportedly did corresponding about the mortgage payments, nor would the Plaintiffs' credit have been affected by the foreclosure. *See Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-cv-2414-B, 2012 WL 555155, at *6 (N.D. Tex. Feb. 21, 2012). Accordingly, the Defendants' motion for summary judgment on the Plaintiffs' negligent misrepresentation claim is **GRANTED**.

**Plaintiffs' Quiet Title and Trespass to Try Title Claims**

"To prevail in a trespass-to-try title action, Plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). "The pleading rules are detailed and formal, and require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title." *Id.*

---

[4] The Plaintiffs further allege that they have incurred attorneys' fees. However, attorneys' fees are not recoverable in a negligence action. *See Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 568 (Tex. 2002).

A suit to quiet title is an equitable remedy to clarify ownership by removing clouds on the title. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). To establish a claim for suit to quiet title, Plaintiffs must show the following: (1) an interest in a specific property; (2) that title to the property is affected by a claim by the defendant; and (3) that the claim, although facially valid, is invalid or unenforceable. *See Rhodes v. Wells Fargo Bank, N.A.*, Civil Action No. 3:10-cv-02347-L, 2012 WL 5363424, at *34 (N.D. Tex. Oct. 31, 2012). An adverse claim, to constitute a cloud on the title removable by the court, must be one that is valid on its face but is proved by extrinsic evidence to be invalid or unenforceable. *See id.*

Because the Plaintiffs have not put forth any evidence that would create a genuine issue of material fact on their substantive claims that would give them a superior title to the Property, the Plaintiffs' suit to quiet title and claim for trespass to try title must fail, and the Defendants' motion for summary judgment on these claims is **GRANTED**.

**Plaintiffs' Declaratory Judgment and Accounting Claims**

The Plaintiffs seek the remedies of a declaratory judgment and an accounting. Because the court has granted summary judgment for the Defendants on all of the Plaintiffs' claims, the Plaintiffs are not entitled to any damages or equitable remedies.

### Conclusion

Based on the foregoing, the Defendants' motion for summary judgment (docket entry #25) is hereby **GRANTED**.

IT IS SO ORDERED.

**SIGNED this the 28th day of March, 2014.**

-17-

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE